FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

MAR 26 2001

JAMES W McCORMACK, CLERK
By: _____
                  DEP. CLERK

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

ELLIS FOSTER, Individually and on Behalf of
the Estate of Eddie Bagby, Jr.                                              PLAINTIFF

v.                              No. 4:99CV733 JWC

LARRY NORRIS, Individually and in His
Official Capacity as Director of the
Arkansas Department of Corrections;
CLIFFORD TERRY, Individually and in His
Official Capacity as Warden of the
Wrightsville Unit; TOMMY ROCHELLE,
Individually and in His Official Capacity
as Administrator of the Boot Camp; SGT.
RICHARD WINTERS, Individually and in
His Official Capacity as Drill Instructor for the
Wrightsville Unit; SGT. JOHN
BROADWAY, Individually and in His Official
Capacity; and the ARKANSAS
DEPARTMENT OF CORRECTIONS                                                  DEFENDANTS

JOY CANADY, as Natural Parent and Next
Friend of Eddie Lynn Deshaun Roderick Jemeal                               INTERVENOR
Bagby, a Minor

## DEFENDANTS' STATEMENT OF INDISPUTABLE MATERIAL FACTS

1. Defendant Larry Norris was at all times relevant to this complaint the Director of the ADC. *See* Complaint.

2. Defendant Clifford Terry was at all times relevant to this complaint the Warden of the Wrightsville Unit of the ADC. *See* Complaint.

3. Defendant Tommy Rochelle was at all times relevant to this complaint the Administrator of the Boot Camp program at the Wrightsville Unit of the ADC. *See* Complaint.

4. Defendants Richard Winters and John Broadway were at all times relevant to this complaint Sergeants at the Boot Camp. *See* Complaint.

5. Plaintiff is the Administrator of the Estate of Eddie Bagby. *See* Complaint and Ex. 4.

6. Intervenor is the mother of Plaintiff's decedent Eddie Bagby's child. *See* Complaint in Intervention.

7. Plaintiff's decedent, Eddie Bagby, died intestate. Ex. 15 at 29.

8. Plaintiff petitioned for the appointment of an Administrator of the Estate of Eddie Bagby, identifying as an heir Eddie L. Bagby, III, Plaintiff's decedent Eddie Bagby's son. Ex. 4.

9. The Probate Court of Yell County appointed Plaintiff as administrator of the estate. Ex. 4.

10. Plaintiff's decedent Eddie Bagby (Bagby) entered the Arkansas Department of Corrections (ADC) on January 8, 1999. Ex. 1.

11. Bagby was an African-American male, 24 years old at all times relevant to this complaint. Ex. 1.

12. The ADC contracts with a medical provider, Correctional Medical Services (CMS), to ensure medical care for inmates. Ex. 14 at 7.11

13. Bagby was evaluated by CMS medical staff upon intake into the ADC. Ex. 1.

14. Bagby disclosed to CMS medical staff a medical history of childhood asthma. Ex. 1.

15. Bagby was not on any medication for asthma while incarcerated in the ADC. Ex. 1.

16. Prior to his incarceration, Bagby had been an habitual crack cocaine smoker. Ex. 2.

17. Bagby did not disclose a history of crack cocaine abuse to medical personnel. Ex. 1, Ex. 14 at 57.12-58.12.

18. Bagby did not disclose a medical history of sickle cell trait, which was probably unknown to Bagby. Ex. 1.

19. Bagby applied for and was accepted to the ADC's Boot Camp program. Ex. 1.

20. The Boot Camp program began in April, 1990. Ex. 11 at 29.20.

21. Approximately 6000 inmates have processed through the Boot Camp program. Ex. 11 at 84.2

22. The Boot Camp program is 105-day military-like program "intended to teach self-control, responsibility, and the skills and habits needed for a positive and productive life to individuals who have shown that these factors are lacking or faulty in their lives." Ex. 3.

23. Bagby transferred to the Boot Camp on March 9, 1999. Ex. 1.

24. Bagby was evaluated by medical staff upon his arrival at the Boot Camp prior to Shock. Ex. 1.

25. Defendant Norris's office is in Pine Bluff and he was not present at the Boot Camp on March 9, 1999.

26. Defendant Terry's office is at the Wrightsville Unit, not the Boot Camp, and he was not present at the Boot Camp on March 9, 1999, at any time when Mr. Bagby was there. Ex. 10 at 26.13 and 39.9.

27. Bagby and the other inmates began the "Shock" portion of the program around 1:30 p.m. on March 9, 1999. Ex. 11 at 109.1

28. Shock entails a series of exercises (jumping jacks, push ups, sprints, etc.) structured in a military-type atmosphere. Ex. 11 at 107.13.

29. It was the custom and practice of the Boot Camp to have a nurse present to evaluate inmates prior to Shock. Ex. 11 at 130.19-131.6

30. It was the custom and practice of the Boot Camp to have a nurse complete a form containing a list of all new Boot Camp inmates going through intake and to place an asterisk beside the name of any inmate having medical problems or a history of drug abuse. Ex. 11 at 82.18

31. Inmates identified with an asterisk then had their white uniform marked with a large red mark to indicate that that particular inmate should be monitored more closely as he went through Shock. Ex. 10 at 48.1; 11 at 83.1

32. Immediately prior to Shock, the nurse presented Mr. Rochelle with names of the inmates, identifying those with medical problems of which ADC personnel should be aware.

33. There was no asterisk beside the name of Eddie Bagby. Ex. 11 at 86.23

34. The medical staff did not inform the ADC officers of Mr. Bagby's history of childhood asthma. Ex. 11 at 85.21

35. If Mr. Rochelle had known about Mr. Bagby's medical history (asthma or crack use), he would have place a red mark on Mr. Bagby's uniform. Ex. 11 at 85.25

36. It was the custom and practice of the Boot Camp to have a nurse present during Shock. Ex. 10 at 29.9

37. Nurse Martinez was present at the Boot Camp immediately prior to Shock and was in the nurse's station at the time the inmates were taken outside to begin Shock. Ex. 11 at 99.7-99.27

38. Mr. Rochelle did not know that Nurse Martinez had left the Boot Camp until he called for medical assistance for Mr. Bagby. Ex. 11 at 99.23

39. Approximately five minutes into Shock, Mr. Bagby discontinued exercising. Ex. 11 at 109.2

40. Mr. Broadway and Mr. Winters repeatedly informed Mr. Bagby that he would be pepper sprayed if he failed to resume exercising. Mr. Rochelle heard the warnings. Ex. 11 at 112.6.

41. After a few minutes, Mr. Rochelle ordered Mr. Broadway and Mr. Winters to get Mr. Bagby up. Ex. 11 at 119.5 and 137.5; Ex. 12 at 246.5.

42. Mr. Rochelle was about 30 feet away from Mr. Broadway and Mr. Bagby. Ex. 11 at 112.21; Ex. 12 at 251.14.

43. Mr. Broadway then sprayed pepper spray in Mr. Bagby's direction. Ex. 12 at 251.8.

44. Mr. Rochelle was aware that pepper spray had been administered in the direction of Mr. Bagby, although Mr. Bagby did not react to that first spray. Ex. 11 at 120.4; Ex. 12 at 259.14.

45. Because of the strong wind, Mr. Rochelle believed Mr. Winters had sprayed Mr. Bagby; therefore, Mr. Rochelle ordered Mr. Broadway to take Mr. Bagby to wash up. Ex. 11 at 120.16; 139.4.

46. Mr. Broadway did spray Mr. Bagby again, a few minutes after the first spray when he and Mr. Bagby were behind the building. Ex. 12 at 276.

47. Mr. Rochelle did not witness any other pepper spray event regarding Mr. Bagby and was not aware of any other event until Mr. Broadway later admitted another administration. Ex. 11 at 141.2; Ex. 12 at 278.4.

48. Mr. Winters did not observe Mr. Broadway spray Mr. Bagby with pepper spray. Ex. 12 at 278.4; Ex. 13 at 147-148 and 154.

49. Six to eight minutes after Mr. Rochelle ordered Mr. Broadway to allow Mr. Bagby to wash up, Mr. Rochelle walked around the building and saw Mr. Bagby on the ground. Ex. 11 at 131.17 and 141.23.

50. Mr. Rochelle immediately called for medical attention for Mr. Bagby. Ex. 11 at 143.15.

51. Officers carried Mr. Bagby into the infirmary. Ex. 11 at 151.17.

52. Mr. Bagby was attended by medical staff and received quality medical attention in the infirmary. The medical provider, CMS, called for an ambulance. Mr. Bagby was transported to the hospital and died later that evening. Ex. 1.

53. Mr. Broadway received a reprimand and a three-day suspension for his use of pepper spray during the Bagby incident. Warden Terry issued the reprimand/suspension finding that Mr. Broadway violated ADC policy because the use of pepper spray was unnecessary as Mr. Bagby did not jeopardize safety and security. Ex. 8; Ex. 10 at 63.11.

54. Director Norris testified that he did not agree with Mr. Broadway's use of pepper spray. Ex. 9 at 38.18.

55. Mr. Rochelle testified that pepper spray was not warranted during the incident with Mr. Bagby. Ex. 11 at 117.15 and 159.17.

56. Since the commencement of the Boot Camp program, pepper spray has hardly been used -- only on a few occasions prior to the Bagby incident. Ex. 13 at 196.16; Ex. 11 at 124.22.

57. Mr. Broadway acknowledged that he received use of force training, particularly on AR 409 and AD 97-01, prior to the Bagby incident. Ex. 12 at 156.7; Ex. 6.

58. ADC Administrative Regulation 409 states in relevant part that non-deadly force may be used to maintain order, discipline and compliance with orders. Ex. 6.

59. ADC Administrative Directive 97-01 states in relevant part that non-deadly force may be used to force an inmate to comply with orders if the inmate's non-compliance jeopardizes institutional safety and security. Ex. 6.

60. ADC Administrative Directive 97-01 requires that all ADC employees must receive pepper spray training/certification before that employee will be allowed to carry pepper spray. Ex. 6.

61. Mr. Broadway was certified to carry and use pepper spray. Ex. 12 at 138.20 and 141; Ex. 6; Ex. 7.

62. Richard Winters did not physically touch Mr. Bagby at any time on March 9, 1999. Ex. 13 at 143.23-144.

63. Mr. Winters was certified to carry and use pepper spray. Ex. 6 and 7.

64. Richard Winters has never administered pepper spray on an inmate. Ex. 13 at 195.1

65. Plaintiff Ellis Foster, Administrator of Mr. Bagby's estate, is an ex-police officer. Ex. 15 at 6.17.

66. Plaintiff Foster testified that, as a police officer, he had witnessed other officers inappropriately use pepper spray. He then affirmed that he was not responsible for those officers' conduct. Ex. 15 at 27.14.

Respectfully submitted,

MARK PRYOR
Attorney General

By: *Michelle B. Odum*

Michelle Banks Odum, #94135
Assistant Attorney General
323 Center Street, Suite 200
Little Rock, AR 72201-2610
Telephone: (501) 682-1051
Facsimile: (501) 682-2591
ATTORNEYS FOR DEFENDANTS

7

## CERTIFICATE OF SERVICE

I, Michelle Banks Odum, Assistant Attorney General, do hereby certify that a copy of the foregoing has been delivered to the following on this 26th day of March, 2001:

Mr. Ralph Cloar, Jr.  **Via Hand Delivery**
Prospect Bldg., Suite 640
1501 N. University Ave.
Little Rock, AR  72207-5235
(501) 666-6682
ATTORNEY FOR PLAINTIFF

Mr. Timothy A. Rowe  **Via Overnight Delivery**
22 E. Washington St., Suite 600
Indianapolis, IN  46204
(317) 632-2524
ATTORNEY FOR PLAINTIFF

Ms. Pamela D. Brogdon  **Via Hand Delivery**
1014 W. Third St.
Little Rock, AR  72201
(501) 376-7772
ATTORNEY FOR INTERVENOR

_____
Michelle Banks Odum

q:\civil\michelleo\foster99-733\msj01 facts

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS

# Exhibits Attached to Original Document in Court's Case File