

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

APR 11 2001

JAMES W. McCORMACK, CLERK
By:_____
                      DEP CLERK

# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## WESTERN DIVISION

| | |
|---|---|
| ELLIS FOSTER, Individually, and on behalf of the ESTATE OF EDDIE BAGBY, JR., ) ) ) Plaintiff, ) ) v. ) ) LARRY NORRIS, individually, and in his official capacity as Director of the Arkansas Department of Corrections as warden of the Wrightsville Unit, TOMMY ROCHELLE, individually, and in his official capacity as administrator at the boot camp, SGT. RICHARD WINTERS, individually, and in his capacity as drill instructor for the Wrightsville Unit, and SGT. JOHN BROADWAY, individually, and in his official capacity, Arkansas Department of Corrections, ) ) ) ) ) ) ) ) ) ) ) ) ) Defendants. ) | No. 4:99CV733 JWC |

## *PLAINTIFF'S MOTION TO EXCLUDE ALEXANDROS PAPPAS, M.D. AS AN EXPERT WITNESS FOR THE DEFENDANTS*

Comes now the Plaintiff, by counsel, and respectfully moves the Court to exclude the expert testimony of Alexandros Pappas, M.D. in this matter as his testimony fails to meet the relevancy and reliability requirements of Rule 702 and 703 of the Federal Rules of Evidence, and fails according to Daubert/Kuhmo requirements for reliable testimony to assist the jury as the trier of fact. In support thereof, the Plaintiff will show the Court as follows:

1.   That based upon the testimony in this case, it is unclear as to what Alexandros Pappas' opinion actually is as it is contradictory and confusing.

2.   That Alexandros Pappas' testimony is not relevant as his reasoning and methodology cannot be applied properly to the facts in this case and the evidence supporting his opinion is not sufficient to allow a reasonable juror to conclude the proposition is more likely to be true then false.



3. Dr. Pappas' opinion differs from the basic medical knowledge in sickle cell trait hypoxia, and the effect of capsicum on the human body. The expert has not offered reasons as to why his opinion contradicts such evidence.

4. That the opinion of Dr. Pappas is not reliable, and his reasoning and methodology underlining his opinion is not supported by adequate validation to render it trustworthy. His opinion is truly ipsi dixit, a bald assertion with no supporting factual or scientific basis. Dr. Pappas has not applied the principals and methods of science reliably to the facts of this case. He is not using the same carefulness in his opinion as he would in his regular professional work outside his paid litigation consulting.

5. Plaintiff hereby attaches a Memorandum of Law in Support of this motion.

WHEREFORE Plaintiff prays that the Defendant Alexandros Pappas be excluded from testifying pursuant to Rule 702, 703 and the principals of Daubert/Kuhmo, and for other just proper relief in the premises.

Respectfully submitted,

ROWE & HAMILTON

_____
Timothy A. Rowe

### *CERTIFICATE OF SERVICE*

I hereby certify that a copy of the above and foregoing has been served by first class United States mail, postage prepaid, this __10th__ day of April, 2001, to the following:

Michelle Banks Odum
Arkansas Attorney General's Office
Catlett-Prien Tower Bldg.
323 Center Street, Suite 200
Little Rock, AR 72201-2610

2

Ralph Cloar, Jr.
Attorney at Law
1501 N. University, Suite 640
Little Rock, Arkansas  72207-5235

Pamela D. Brogdon
1014 West Third Street
Little Rock, AR  72201

_____
Timothy A. Rowe


ROWE & HAMILTON
600 Victoria Centre
22 East Washington Street
Indianapolis, IN  46204
(317) 632-2524
Attorney No. 6554-49

### IN THE UNITED STATES DISTRICT COURT
### EASTERN DIVISION OF ARKANSAS
### WESTERN DIVISION

| | |
|---|---|
| ELLIS FOSTER, Individually, and on behalf of the ESTATE OF EDDIE BAGBY, JR., | ) ) ) |
| Plaintiff, | ) ) ) |
| LARRY NORRIS, individually, and in his official capacity as Director of the Arkansas Department of Correction as warden of the Wrightsville Unit, TOMMY ROCHELLE, individually, and in his official capacity as administrator at the boot camp, SGT. RICHARD WINTERS, individually, and in his capacity as drill instructor for the Wrightsville Unit, and SGT. JOHN BROADWAY, individually, and in his official capacity, Arkansas Department of Corrections, | ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants, | ) ) |

### *MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO EXCLUDE ALEXANDROS PAPPAS, M.D.*

Rule 702 of Federal Rules of Evidence states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact at issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise.

Rule 703 of Federal Rules of Evidence states:

> The facts or data in a particular case upon which a expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

The United States Supreme Court feared that expert testimony based on science was in fact resulting in unreliable speculation and this resulted in the gatekeeping requirements of Daubert v. Merrell Dow Pharmaceuticals, Inc. 509 U.S. 579 (1993), and Kuhmo Tire v. Carmichael, 526 U.S. 137 (1999).

1

The Court in <u>Kuhmo</u> stated:

> The objective of that requirement is to ensure the reliability and relevancy of expert testimony. It is to make certain that an expert, whether basing testimony on professional studies or personal experience, employs in a courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field. <u>Kuhmo</u>, 119 S. Ct. 1167, 1176.

The Court in <u>Daubert</u> stated that relevance of expert testimony means that the reasoning or methodology can be applied properly to the facts in the case. <u>Daubert</u> at 592-93. Evidence supporting the experts opinion must be sufficient to allow a reasonable juror to conclude the proposition is more likely to be true than false. <u>Glaser v. Thompson Med. Co.</u>, 32 F. 3d 969, 972 (6th Cir. 1994). For an experts opinion to be reliable the reasoning or methodology underlying the experts proffered opinion has be supported by adequate validation to render it trustworthy. <u>Westberry v Gislaved Gummi AB</u>, 178 F. 3d 257, 260 (4th Cir. 1999). At the least, the testimony should be based upon sufficient facts or data; the testimony should be the product of reliable principals and methods; and the expert should apply the principals and methods reliably to the facts in the case. The Supreme Court in <u>Daubert</u> set forth some general factors for a court to consider in evaluating the reasoning or methodology underlying the experts testimony, <u>Daubert</u> at 593. However, in <u>Kuhmo Tire</u> the Court noted that while the factors should be considered as reasonable methods of reliability, the factors are not exclusive and the District Court has given broad latitude to determine when they apply. <u>Kuhmo Tire</u> at 152-153.

The 7th Circuit has stated on the reliability of expert witnesses:

> If, therefore, an expert proposes to depart from the generally accepted methodology of his field and embark on a sea of scientific uncertainty, the Court may appropriately insist that he ground his departure in demonstrable and scrupulous adherence to the scientist's creed of meticulous and objective inquiry. To forsake the accepted methods without even inquiring why they are the accepted methods in this case, why specialists in testing human tissues for asbestos fibers have never used the familiar high temperature ashing method, without even knowing

2

what the accepted methods are, strikes us, as it struck Judge Manning, as irresponsible. Braun v. Lorillard, Inc. 84F 3d 230 (7th Cir. 1996) cert denied, 519 US 92 (1996).

In Braun, the judge indicated that:

> The expert really didn't have any knowledge of the methodology that should be employed and he still doesn't have information regarding the methodology that should be employed in respect to lung tissue. It seems to me that this witness knows absolutely nothing about analyzing lung tissue and asbestos fibers. Id at 234.

The 5th Circuit has stated:

> That the underlying predicates of any cause and effect medical testimony or that medical science understands the physiological process by which a particular disease or syndrome develops and knows what factors cause the process to occur. Based on such predicate knowledge, it may be possible to fasten legal liability for a persons disease or injury. Black v. Food Lion, Inc., 171 F.3d 308 (5th Cir. 1999).

Not only is Dr. Pappas' opinion contradictory, it is unclear from his testimony as to what exactly his opinion is. It is clear he did not employ the same intellectual rigor that characterizes the practice of an expert in a relevant field to arrive at his opinion. Dr. Pappas' opinion embarks upon a sea of scientific uncertainty and his methodology shows that he does not understand what causes someone with sickle cell trait to go into sickle cell crisis, what level of exertion is needed for someone with sickle cell trait to go into sickle cell crisis, what level of exertion Eddie Bagby had on the day of his death, what effects capsicum has on the respiratory system and the human and animal studies done on capsicum. He has reached a bald conclusion in contradiction of all the medical experts' deposition testimony on this case with no clear methodology on how he reached that opinion. It is speculation and conjecture at best and his knowledge in these fields is very suspect for him to reach that bald conclusion. Therefore he has not met the reliability and relevancy requirements necessary to allow him to testify.

### I.   *WHAT EXACTLY IS ALEXANDROS PAPPAS' M.D.'S OPINION?*

It is unclear exactly what Dr. Pappas' opinion is as far as causation of Eddie Bagby's death. Dr. Pappas states in his deposition that he has reviewed the entire deposition of Dr.

3

Steven Erickson, M.D., the doctor who did the autopsy, and reviewed his autopsy report. He states he agrees with the findings in the autopsy report and what he testified to in his deposition. (Deposition of Alexandros Pappas, p. 13). I have attached as Exhibit 1, excerpts of Dr. Erickson's opinions stated in his deposition. It is clear that Dr. Erickson said that pepper spray was a significant player situationally, circumstantially and in reality in Eddie Bagby's death. Even in his cause of death he says that pepper spray was a contributory factor in Eddie Bagby's death and a primary factor in that he listed it first. He states when someone collapses after being pepper sprayed it would be irresponsible for him not to put it in the cause of death. Dr. Pappas says in his deposition that he agrees with this conclusion. (Deposition of Pappas, p. 13). However, later Dr. Pappas states in his deposition that he thinks that the pepper spray was coincidental and that he does not think it contributed to Eddie Bagby's death, and thinks he would have died anyway. (Deposition of Pappas, p. 64). He contradicts himself and says that he disagrees with Dr. Erickson as to whether pepper spray contributed to his death. (Deposition of Pappas, p. 65). Pappas even goes on to say that Eddie Bagby could be spayed 100 times with pepper spray and it would not change his opinion. (Deposition of Pappas, p. 113). This again clearing contradicts Dr. Erickson's testimony in which Pappas said he agreed with all of his findings including the autopsy findings.

Dr. Erickson indicates that he cannot tell to a reasonable degree of medical certainty when Eddie's sickling crisis began, i.e., whether it was before or after Eddie was pepper sprayed. Dr. Pappas indicates that he believes Eddie was in a severe sickling crisis before he was pepper sprayed which is in direct contradiction to Dr. Erickson. (Deposition of Pappas, p. 64).

Dr. Erickson indicated in his testimony that he could not say to a reasonable degree of medical certainty what level of hypoxia Eddie Bagby had before he was pepper sprayed. However, Dr. Pappas indicates that Eddie was in a severe hypoxic state that led to his sickling before he was pepper sprayed. (Deposition of Pappas, pp. 64, 65).

Clearly, his opinion contradicts Dr. Erickson that he originally said under oath he agreed to. So the question is which opinion of Dr. Pappas is the one he is setting forth in this case

4

regarding the causation of Eddie Bagby's death? The opinion of Dr. Erickson which he agreed with, or an opinion that he later stated in his deposition that is contradictory to Dr. Erickson's opinion. Clearly, his opinion is contradictory, confusing, and lacks reliability.

Pappas also indicated that he agreed with the supplemental report of Dr. Wecht on February 7, 2001, which the Plaintiff attaches as Exhibit 2. Wecht's report sets forth that pepper spray induced aspiration of gastric contents and severe hypoxia and an acute asthmatic attack which killed Eddie Bagby. This is completely different to Dr. Pappas opinion. Again, what is Pappas' opinion? Surely such a confusing opinion that can be changed at a whim with no supporting methodology, medical evidence or reasoning shows his opinion to be highly suspect.

## II. <u>DR. ALEXANDROS PAPPAS' METHODOLOGY IS FLAWED AND HE HAS INCOMPLETE OR LITTLE KNOWLEDGE IN REFERENCE TO AREAS OF SICKLE CELL TRAIT, REQUIRED LEVELS OF EXERTION TO GO INTO A SICKLE CELL CRISIS, THE EFFECTS OF CAPSAICIN ON THE HUMAN BODY AND RESPIRATORY SYSTEM BASED ON HUMAN AND ANIMAL STUDIES, AND THE HYPOXIA LEVELS REQUIRED TO SEND SOMEONE INTO A SICKLING CRISIS.</u>

Dr. Pappas cannot prove to this court that his opinion is trustworthy and is not simple *ipse dixit* bald assertion with no supporting methodology and scientific basis. Dr. Pappas' methodology, is not the kind relied upon by the relevant scientific community but is based on a severe lack of knowledge of the critical points in this case to determine causation. His deposition testimony shows scientific uncertainty and lack of knowledge in these areas and does not demonstrate an adherence to the scientist's creed of meticulous and objective inquiry. Dr. Pappas knows absolutely nothing concerning certain issues that are critical to determine Eddie Bagby's cause of death. He does not even know the accepted medical literature regarding sickle cell trait and sudden death that are required for him to make this opinion. It is clear from his deposition testimony that he started with his opinion that Eddie Bagby was in a severe sickling crisis and severe hypoxic state before he was pepper sprayed and then from this bald assertion developed little or no methodology to support it.

Eddie Bagby had sickle cell trait. In order for someone that has sickle cell trait to get

into a severe sickling crisis there must be severe hypoxic state. What methodology did Dr. Pappas have to support his bald assertion that Eddie Bagby was in a severe sickling crisis/severe hypoxic state before he was pepper sprayed? In his interrogatory answers to expert interrogatories, he indicates that part of his opinion was based upon dust exposure.

However, when questioned about this he said he didn't know anything about the dust exposure that day and he didn't know whether dust exposure had anything to do with Eddie Bagby's difficulty breathing. (Deposition of Pappas, p. 40, 41).

What even makes his opinion more confusing is that he talks about two hypoxic episodes, one before the first pepper spray and one after the second pepper spraying. (Deposition of Pappas, p. 32). However, he never ties in the second hypoxic episode to the first hypoxic episode in relation to his sickling crisis.

It is clear from the medical literature that severe exertion causing a severe lack of oxygen is necessary to send someone with a sickle cell trait into to severe sickling crisis. Dr. Pappas states that he is not familiar with the level of exertion in any of the sudden death articles of someone with sickle cell trait that would send someone into a sickling crisis. (Deposition of Pappas, p. 46). He did not know the level of exercise at the boot camp. He did not know the exact quantitation of what Eddie Bagby was doing physically before he was pepper sprayed. (Deposition of Pappas, p. 34). He did not know the amount of exercises or repetitions. (Deposition of Pappas, p. 34). Dr. Pappas states that he does not know how severe the lack of oxygen has to be for hypoxia to lead to a sickling crisis. (Deposition of Pappas, p. 47). Then amazingly he states in his deposition that even if Eddie Bagby would have been sprayed in the face it may or may not have had an effect. (Deposition of Pappas, p. 48). When asked what did he mean, may or may not have had an effect, he says, "I don't know." (Deposition of Pappas, p. 48). When he was asked what does he base that on, he said, "I just don't know." (Deposition of Pappas, p. 48). He has shown that he has no methodology in excluding pepper spray.

Dr. Pappas didn't even know if the symptomology of sickling is instantaneous. (Deposition of Pappas, p. 60). Even through the study he relied upon showed the sudden death

in basic training occurred after extreme exertion during basic training in the military, he had no evidence and did not know Eddie's level of exertion before he was pepper sprayed. (Deposition of Pappas, p. 80). He had no explanation as to if Eddie was so sensitive to have an hypoxic state from very little exercise why Eddie never sickled in the past as shown by no end organ damage on his autopsy report. (Deposition of Pappas, p. 79). He does not know the level of Eddie's hydration before he was pepper sprayed. (Deposition of Pappas, p. 84). He did not even know, even though he agreed with it earlier in his deposition, that the exercise has to strenuous in order to send someone into a sickling crisis. (Deposition of Pappas, p. 85). Furthermore, he did not know the METS level that is necessary for someone to become severely hypoxic in a sickling condition. Furthermore, he indicates that if Eddie Bagby had gotten oxygen, pain medication, and water when he began to sickle it would have had a definite effect on his condition and could have saved him. (Deposition of Pappas, p. 86). He even believed that pepper spray would cause hypoxia if it was inhaled. (Deposition of Pappas, p. 88). However, he said he didn't know for sure whether pepper spray was in Eddie Bagby's lungs. (Deposition of Pappas, p. 90).

     Then, he stated he did not know the level of exertion necessary for someone with sickle cell trait for him to begin to sickle. He states, "At this time I just don't know." (Deposition of Pappas, p. 91). Then he makes this bald assertion that even though he has no idea how much exertion is necessary to cause someone to be hypoxic and start sickling in an individual who has trait, it is still his opinion that Eddie began to sickle before he was sprayed. Even though he did not know the exact amount of exercise that Eddie had done before he began to sickle it was still his opinion that Eddie had begun to sickle before he was sprayed. (Deposition of Pappas, p. 98). Even though the article he relied upon said that pepper spray can cause severe bronchial restriction that may lead to respiratory insufficiency and suffocation, which would indicate a severe hypoxic state, he still came to the same conclusion that pepper spray had nothing to do with his death. (Deposition of Pappas, p. 114). To indicate how ridiculous this opinion was, he then states that it wouldn't have mattered if Eddie Bagby was sprayed one hundred times, he would not change his opinion. (Deposition of Pappas, p. 113). Dr. Pappas indicated when

7

Bagby walked behind the building, his hypoxia was not so severe as to go into cardiorespiratory arrest. This was after the "first" administration of pepper spray. It is interesting how his methodology does not indicate what sent Eddie Bagby into a more severe hypoxic state, because he was not in that severe of an hypoxic state before he was pepper sprayed, to where he could walk around the building. (Deposition of Pappas, p. 54).

Dr. Pappas then showed that he knew very little, if anything about the effect of capsicum on the human body. He even states he doesn't know whether if Eddie Bagby was sprayed in the face or not it would have had an effect on him. He just doesn't know and doesn't know what to base that on. (Deposition of Pappas, p. 48). Dr. Pappas states that he was not aware of the literature regarding capsicum effect on asthmatics. However, he did state that pepper spray can cause bronchial restriction in people who have asthma and that you should be careful when you use it on someone with asthma. (Deposition of Pappas, p. 54). Then, he indicates that he has not reviewed the literature regarding asthmatics and reduction of airflow after being exposed to capsicum. (Deposition of Pappas, p. 55). He indicates he has not read all the literature on capsicum and did not even know that the medical article he relies upon talks about OC spray precipitating an acute asthma attack. He has not reviewed all the literature in reference to OC sprays ability to precipitate an asthmatic attack. (Deposition of Pappas, p. 56). He did not even know the article stated that OC spray may increase the risk of respiratory arrest. (Deposition of Pappas, p. 57). He states he has not reviewed all the articles on capsicum or its effects, that there could be more information concerning capsicum that he simple does not know. (Deposition of Pappas, p. 57). Then he boldly states, *"I could review the literature and certainly come to an opinion, but at this time I haven't."* (Deposition of Pappas, p. 57).

Even though he believes that asthmatics have hypersensitive airways and that if they get a trigger in there it can cause the airways to inflame more and that capsicum is a trigger, he still did not indicate how he had excluded capsicum in his opinion of causation. (Deposition of Pappas, p. 66). Even though he knew that pepper spray can cause nausea and vomiting, he speculates that he does not agree that pepper spray led to aspiration of gastric contents with no

8

indications as to how he reached that opinion. (Deposition of Pappas, p. 69). Even though he indicates the aspiration of gastric contents sealed Eddie Bagby's fate, because after the aspiration, he became unconscious. He does not indicate in his opinion how he excluded pepper spray in causing Eddie's aspiration. The opinion on aspiration is somewhat contradictory. At first he says hypoxia led to the aspiration and then later he says that he aspirated after he lost consciousness. (Deposition of Pappas, pp. 69, 75). Even though Pappas indicates he is aware that OC is dose dependent, the more OC you get the more severe the effect, he did not explain how the repeated use of pepper spray would have no effect on Eddie Bagby. Even though he believes that if pepper spray got in the lungs it would have an inflammatory effect and would not help someone with asthma, and that he doesn't know if Eddie Bagby had any pepper spray in his lungs. He still makes the bald assertion that inflammation of the lungs was due to either asthma or aspiration and not due to capsicum. (Deposition of Pappas, p. 96). This again shows a lack of understanding of pepper spray, as pepper spray can induce an acute asthmatic attack. Even though he indicates that pepper spray can cause someone to have severe bronchial constriction that may lead to respiratory insufficiency and suffocation and that would be a severe hypoxic state, he still does not indicate why or how he excluded pepper spray from Eddie Bagby's cause of death.

It is absolutely clear in reviewing all of this information that Dr. Pappas came to the bald assertion based on pure speculation that pepper spray had nothing to do with Eddie Bagby's death, and Pappas' methodology was completely flawed as to how he reached that conclusion. This was just a bald statement of scientific speculation with nothing to back it up. He clearly shows that he has a lack of understanding of what causes someone who has sickle cell trait to begin to have a severe sickling crisis where it threatens his life. He does not know the level of exertion that sends someone into a severe sickling crisis. He does not know the level of exertion that Eddie Bagby had on that date of his death. He does not know the level of stress at the boot camp, and then boldly threw in dust exposure and admitted that he didn't have any information or facts that showed that Eddie Bagby's difficulty breathing was caused by dust exposure. Even

though he showed that he had some knowledge of capsicum's effect on the respiratory system on someone that is having an acute asthmatic attack, his opinion is absolutely silent on how he excluded pepper spray in Eddie Bagby's cause of death. He indicated that he was not familiar with many of the human and animal studies on capsicum that show the severe effect it has on the lungs. Clearly from this information it shows that Dr. Pappas' opinion in the purest form is *ipse dixit,* pure speculation based upon flawed methodology and reasoning, and the Court should exclude the opinion.

### III. DR. PAPPAS' OPINION IS BASED UPON SELECTIVE FACTS; THEREFORE HIS OPINION IS BASED UPON INSUFFICIENT FACTS OR DATA AND IN THIS CASE WOULD MAKING IT INHERENTLY UNRELIABLE.

Dr. Pappas bases his opinion upon selected facts that are not supported in the record. He stated that the reason he believed that Eddie Bagby was in a severe sickling crisis was that Eddie Bagby went down on his knees and was unresponsive to verbal commands and indifferent. (Deposition of Pappas, p. 51). However, according to the depositions of Roderick Sterling, Harold Roberts and Perry Bishop, Eddie Bagby was saying a lot of things to the officers such as that he wanted to go home, he was having problems breathing, let him catch his breath, he didn't want to go to the boot camp, and send him back. Dr. Pappas completely left these facts out of his opinion. Dr. Pappas also indicated that he thought Eddie Bagby only said, "I can't" once or twice before he was sprayed the first time, however the record indicates according to John Broadway's deposition he said, "I can't" five or six times before he was sprayed. Dr. Pappas then said, that if Eddie Bagby said that five or six times, "I can't", it would be indicative to him that Eddie had more cognitive brain function and that he would not have been in as much of a hypoxic state. These facts clearly would not support Dr. Pappas opinion that Eddie Bagby was in a severe sickling state before was pepper sprayed. (Deposition of Pappas, p. 103).

Dr. Pappas seems confused as to Eddie's level of hypoxia in that Eddie Bagby was able to walk around the building after he was sprayed the first time and sat down. He talked about two different hypoxic events, but does not explain what he means by that and what relation

10

pepper spray may have had in the second hypoxic event, or in Eddie Bagby's collapse after he was sprayed back behind the building. These facts are completely ignored by Dr. Pappas. He speculates that Eddie was in a severe sickling crisis, although if Eddie was able to walk around the building, according to his opinion, this would seem contradictory.

Dr. Pappas also bases his opinion that the first shot of pepper spray missed Eddie Bagby as it did not hit him in the face and he had no reaction. Clearly, we have shown, based upon the deposition of Roderick Sterling and Harold Roberts and the deposition of Don Cates, it is highly disputed whether the first administration of pepper spray had no effect on Eddie Bagby. According to Roberts and Sterling, they had to drag him back behind the building after he was sprayed. According to Cates, when he saw him Eddie Bagby he was flat down on his stomach with his head in his arms rolling from side to side. This would indicate Eddie Bagby's position after he was sprayed the first time as Eddie Bagby's body position is different than what Rochelle and Broadway observed. It is reasonable to infer this was his position after he was sprayed the first time and he was sprayed again which would explain the mark on the side of his head because Broadway could not reach his face, and then when he was dragged back behind the building which would indicate the severity of Eddie's reaction to the two pepper sprayings . None of these facts were taken into account in Dr. Pappas' opinion. Again, this would show that Eddie inhaled the pepper spray based upon the severe reaction. Furthermore, delivery velocity of pepper spray is at 17 feet per second, and given the attached affidavit and testimony of Dr. Stopford, it is untenable to state that Eddie Bagby did not inhale any pepper spray on the first or "second" administration. Even Broadway said he sprayed him across the face from two feet away. John Broadway's testimony is also suspect, where he said Bagby only coughed twice after he sprayed him the second time. However, what Dr. Pappas did not consider that almost immediately after he was sprayed, the "second" time he collapsed near the sidewalk. He was sprayed 2 to 3 feet away from his face and left an orange mark slightly above his eyebrows down to the tip of his nose. With the force that the pepper spray comes out at 17 feet per second a second in a cone pattern, to say that Eddie Bagby did not inhale any of it is simply ridiculous.

Again, Dr. Pappas presents no evidence as to why Eddie Bagby did not inhale, and had no knowledge as to how much pepper spray was used on Eddie Bagby. In fact, he is still under the opinion, and was told that pepper spray was only used twice. Clearly, from the deposition testimony that we have set forth in our previous motions, pepper spray was used more than twice and a probable five times on Eddie Bagby. We know that at least one half to a full canister was used. None of this information was taken into effect in Dr. Pappas' opinion. Clearly, based upon this information, Dr. Pappas' opinion is based upon selective facts that are not supported in the record. He has omitted facts to consider in his opinion that may be critical or change his opinion. Again, his methodology is flawed and he has not shown that his opinion is reliable.

Plaintiffs incorporate into this motion their Memorandum of Law in Opposition to Defendant John Broadway's Motion for Partial Summary Judgment which sets forth the opinions of Dr. Wecht, Dr. Stopford, and Dr. Zimmerly.

WHEREFORE, pursuant to the Daubert/Kuhmo and Rules 702 and 703, Plaintiff respectfully requests the Court to exclude Dr. Pappas' testimony and for all just and proper relief in the premises.

Respectfully submitted,

ROWE & HAMILTON

_____
Timothy A. Rowe

## *CERTIFICATE OF SERVICE*

I hereby certify that a copy of the above and foregoing has been served by first class United States mail, postage prepaid, this ___10th___ day of April, 2001, to the following:

Michelle Banks Odum
Arkansas Attorney General's Office
Catlett-Prien Tower Bldg.
323 Center Street, Suite 200
Little Rock, AR  72201-2610

Ralph Cloar, Jr.
Attorney at Law
1501 N. University, Suite 640
Little Rock, Arkansas  72207-5235

Pamela D. Brogdon
1014 West Third Street
Little Rock, AR  72201

Timothy A. Rowe

ROWE & HAMILTON
600 Victoria Centre
22 East Washington Street
Indianapolis, IN  46204
(317) 632-2524
Attorney No. 6554-49

13

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS

*Exhibits Attached to Original Document in Court's Case File*