FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

APR 25 2001

JAMES W. McCORMACK, CLE
By:_____
                    DEP CLI

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

ELLIS FOSTER, Individually                                              PLAINTIFF
and on behalf of the Estate of
Eddie Bagby, Jr.

JOY CANADY                                                              INTERVENOR

V.                              NO. 4:99CV00733 JWC

LARRY NORRIS, et al                                                     DEFENDANTS

MEMORANDUM OPINION AND ORDER

Eddie Bagby, Jr., (Bagby) collapsed while participating in the "shock" phase of the boot camp program at the Wrightsville Unit of the Arkansas Department of Correction (ADC), and he died within a matter of hours. His estate brings this 42 U.S.C. § 1983 action, contending that the improper use of Cap-Stun pepper spray caused his death. Defendants Larry Norris (ADC Director), Clifford Terry (Wrightsville warden), Sgt. Tommy Rochelle (boot camp administrator), Sgt. Richard Winters, and Sgt. John Broadway (in his official capacity only), have filed a motion for partial summary judgment (docket entry #45), with supporting pleadings (docket entries #46, #47, #79). Plaintiff has responded (docket entries #66, #67, #68, #69, #70, #82).

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). The Court must view the evidence in the light most favorable to the nonmoving party, giving him the benefit of all reasonable factual inferences. <u>Reed v. ULS Corp.</u>, 178 F.3d 988, 990 (8th Cir. 1999).



## Facts

The parties have filed statements of material facts, over thirty depositions, and a multitude of other medical records, prison records, affidavits, reports, responses to requests for admissions, and other documents, all of which the Court has reviewed. Many of the underlying facts are hotly disputed and, because of time constraints and the volume of materials, the Court cannot set forth in detail the evidence supporting each party's version of the events that transpired. Briefly, then, the relevant facts are as follows.

Bagby entered the ADC on January 8, 1999, at the age of twenty-four. Upon arrival or shortly thereafter, he was evaluated by Correctional Medical Services (CMS) personnel. CMS contracts with the ADC to provide medical care for the ADC inmates. On a checklist of various past or current health conditions, Bagby checked the categories of "asthma," "difficulty breathing," and "wheezing or asthmatic attacks" and "recurrent back pain." A handwritten notation states, "difficulty breathing [secondary] to asthma since birth." He was classified as M-1, which meant that he was not restricted from any physical activities. (Defs.' Ex. 1.)

In early March of 1999, CMS personnel cleared him for participation in boot camp. He applied for and was accepted into the boot camp program. This is a 105-day, voluntary program of "intensive behavior modification in an arduous, physically demanding, military-like environment." It is available to first-time felons convicted of non-violent offenses. (Pl.'s Ex. SS; Defs.' Ex. 3.)

Bagby transferred to the boot camp on March 9, 1999. (Defs.' Ex. 1.) Around 1:30 p.m. that day, he and the other inmates began the "shock" portion of the program. This consisted of an introduction to the exercise portion of the program, including sit-ups, push-ups, jumping jacks, running in place, running to a fence and back (eighty to eighty-five yards), and running

2

an obstacle course. It is undisputed that, during this time, the officers yell at the inmates and attempt to "break them down."

After exercising about five minutes, Bagby stopped. According to various witnesses, he went down on one knee, or was on all fours, or was lying on his side on the ground. Defendants Broadway and Winters warned Bagby that he would be pepper sprayed if he failed to resume exercising. Defendant Rochelle heard the warnings and, according to Defendants Broadway and Winters, nodded his approval. No efforts were made to help Bagby get up, nor was he asked if he needed medical assistance. Bagby was not resisting physically, nor was he arguing with the officers, acting aggressively, or posing any threat to officers or other inmates. Defendant Broadway testified that, when told to get up, Bagby said, "I can't." (Pl.'s Ex. D, p.249.) In depositions, at least three inmates testified that Bagby repeatedly told the officers, "I can't breathe," was visibly gasping for air, was obviously breathing hard and trying to get his breath, and was holding his chest. (Pl.'s Ex. L, pp.18-19, 21; Pl.'s Ex. M, pp.16-17, 19; Pl.'s Ex. O, pp.10-12.)

When Bagby did not get up, Defendant Broadway sprayed him with pepper spray. There is a dispute as to whether this spray went into his face, hit the side of his head, or missed him completely. There is also a dispute as whether Bagby had any physical reaction to the spraying.

Defendant Broadway then took Bagby behind a building, apparently to rinse off, where Bagby sat down on some steps. There, Defendant Broadway sprayed him again. There is a dispute as to how many times he sprayed him. Bagby attempted to walk, then fell. Shortly thereafter, Defendant Rochelle walked around the building and saw Bagby on the ground. No medical personnel were on the boot camp grounds, so he called medical staff from the

Wrightsville unit, about a mile away. Officers carried Bagby to the boot camp infirmary, whe[re] he was attended by non-Defendant medical personnel. He was transported by ambulance [to] the hospital and died at 6:30 p.m. that evening.

An autopsy reported that he died as a result of aspiration of gastric contents after oleore[sin] capsicum pepper spray exposure, following exertion, complicated by bronchial asthma a[nd] sickle cell crisis due to sickle cell trait, with focal myocarditis, and subacute adrenalitis. (P[l. ] Ex. CC.)

In this complaint (docket entry #1), Plaintiff asserts: (1) cruel and unusual punishme[nt,] excessive use of force; failure to provide adequate medical treatment; failure to train, instr[uct] or supervise; and denial of due process and equal protection, all in violation of the Fifth, Eig[hth] and Fourteenth Amendments to the United States Constitution (Count I); (2) constitutio[nal] violations due to Defendant ADC's failure to develop and maintain proper policies regardi[ng] the use of pepper spray and the failure to adequately supervise and train in this area (Cou[nt] II); (3) violation of the Arkansas Civil Rights Act, Ark. Code Ann. § 16-23-101, et seq. (Cou[nt] III); and (4) pendent state law claims of assault, battery, intentional infliction of emotio[nal] distress or outrage, and wrongful death (Counts IV-VII). Plaintiff seeks compensatory a[nd] punitive damages in excess of $7 million, as well as prospective injunctive relief agai[nst] Defendant ADC.

### Negligence

First, Defendants assert that the conduct of Defendants Norris, Terry, Winters a[nd] Rochelle amounted to no more than negligence, which is not actionable under § 1983. S[ee] Daniels v. Williams, 474 U.S. 327, 328 (1986); Farmer v. Brennan, 511 U.S. 825, 835 (199[4)]

4

Conduct constitutes cruel and unusual punishment in violation of the Eighth Amendment if it involves "the unnecessary and wanton infliction of pain." Whitley v. Albers, 475 U.S. 312 320 (1986). Prison officials violate the Eighth Amendment if they apply force against an inmate "maliciously and sadistically for the very purpose of causing harm," rather than "in a good faith effort to maintain or restore discipline." Id. at 320-21. Relevant factors are the need for application of force; the relationship between the need for force and the amount of force applied; and the extent of injury suffered by the inmate. Hudson v. McMillian, 503 U.S. 1, (1992). A prison official may be liable for failing to protect an inmate from an excessive use of force if he is deliberately indifferent to a substantial risk of serious harm to the inmate Estate of Davis v. Delo, 115 F.3d 1388, 1395 (8th Cir. 1997). The Eighth Amendment is also violated where prison officials commit "acts or omissions sufficiently harmful to evidence deliberate indifference to [an inmate's] serious medical needs." Estelle v. Gamble, 429 U.S 97, 106 (1976).

Reviewing the evidence submitted in the light most favorable to Plaintiff, material, factual issues exist as to whether the conduct of these Defendants would rise to more than negligence under these standards.

### Respondeat Superior

The summary judgment motion asserts that Defendants Norris, Terry, Rochelle and Winters cannot be held liable solely due to their supervisory positions.

The doctrine of respondeat superior is an improper basis upon which to rest a § 1983 claim, and an individual thus cannot be held liable solely on the actions or inactions of his subordinates. Boyd v. Knox, 47 F.3d 966, 968 (8th Cir. 1995). A supervisor can be found

liable if (1) he was personally involved in a constitutional violation, or (2) his "corrective inaction amounts to 'deliberate indifference' to or 'tacit authorization' of the violative practices." Choate v. Lockhart, 7 F.3d 1370, 1376 (8th Cir. 1993). A supervisor also can be held individually liable under § 1983 if his failure to properly supervise or train the offending employee caused a deprivation of constitutional rights. Tlamka v. Serrell, 2001 WL 285149 (8th Cir. Mar. 23 2001); Askew v. Millerd, 191 F.3d 953, 958-59 (8th Cir. 1999). This requires a showing "that the supervisor had notice that the training procedures and supervision were inadequate and likely to result in a constitutional violation." Tlamka, supra (quoting Andrews v. Fowler, 98 F.3d 1069, 1078 (8th Cir. 1996)).

Defendants Rochelle and Winters were present in the field on the date in question. Although they did not spray Bagby, the Court finds that material, factual questions exist as to their personal involvement in other conduct toward Bagby, authorization or approval of conduct, failure to intervene to protect Bagby, failure to properly supervise and train, and failure to ensure prompt and proper medical care.

Defendants Norris and Terry were not present at the boot camp, nor did they directly participate in any actions taken against Bagby. However, the Court finds that material, factual questions exist as to whether they should be liable for failing to ensure adequate training and policies on the appropriate use of pepper spray.

### Qualified Immunity

Government officials performing discretionary functions are shielded from liability for civil damages in a § 1983 action unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald

6

457 U.S. 800, 818 (1982). A defendant's assertion of a qualified immunity defense requir[es] the Court to address three issues: (1) whether the plaintiff has asserted a violation of constitutional or statutory right; (2) if so, whether that right was clearly established at the tim[e] of the violation; and (3) whether, given the facts most favorable to the plaintiff, there are genuine issues of material fact as to whether a reasonable official would have known that t[he] alleged action violated that right. Lambert v. City of Dumas, 187 F.3d 931, 935 (8th Cir. 199[9]). Whether summary judgment on the grounds of qualified immunity is appropriate from [a] particular set of facts is a question of law. Id. However, if there is a genuine dispu[te] concerning predicate facts material to the qualified immunity issue, summary judgment is n[ot] appropriate. Id.

A right is "clearly established," for purposes of qualified immunity, when "the contours [of] the right [are] sufficiently clear that a reasonable official would understand that what he [is] doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). The regulatio[n] or policy in question need not have been previously litigated and determined to be unlawf[ul] before the shield of qualified immunity may be breached. Rather, the unlawfulness of th[e] action simply needs to be apparent in light of pre-existing law. Id.

Neither party has identified any case law addressing whether use of pepper spray upon [a] non-compliant, yet passive and non-threatening, inmate is constitutionally permissible, o[r] whether, before administering pepper spray, prison officials have a constitutional duty t[o] ascertain the existence of medical conditions that might be aggravated by its use[.] Nevertheless, the substantive law regarding excessive use of force and deliberate indifferenc[e] to medical needs, as set forth above, has been clearly established by the United State[s] Supreme Court.

7

Further guidance regarding the use of summary force was set forth by the Eighth Circuit in Hickey v. Reeder, 12 F.3d 754 (8th Cir. 1993). In Hickey, the defendants argued that the Constitution permits the use of summary force (there, a stun gun) to compel compliance with any direct order given in a jail setting (there, to sweep out a cell), and that such authority is necessary to maintain control of the institution. The Eighth Circuit rejected this, stating that it "represents a fundamental misunderstanding of the law concerning the use of force in prison settings." Id. at 758-59. After reviewing existing case law, the Court found that "summary applications of force are constitutionally permissible when **prison security and order, or the safety of other inmates or officers, has been placed in jeopardy.**" Id. at 759. "[S]ummary force has yet to be ratified as the *de jure* method of discipline where security concerns are not immediately implicated." Id.

Here, there is no evidence whatsoever of any security concerns. Just as using a stun gun was not constitutionally permissible to enforce a housekeeping order, pepper spraying an inmate who was unable to continue exercising as part of a voluntary boot camp program does not constitute a clearly established justifiable use of summary physical force.

The case of Jones v. Shields, 207 F.3d 491 (8th Cir. 2000), is distinguishable. First of all, Jones was decided a year **after** Bagby's death. Defendants cannot rely upon its holding to find support for the use of pepper spray in this instance. Furthermore, the actions of the inmate in Jones were more resistant (although not by much) than Bagby. There, the inmate "questioned" the officer's order, was neither handcuffed nor secured in any way, was apparently much larger than the officer and thus could have been perceived as a threat. Id. at 497 & n.8. Also, the amount of pepper spray used was minimal and a nurse flushed his eyes with water within minutes of being sprayed. Id. at 493, 497. There is no indication that

the inmate suffered from any medical condition that was exacerbated by the spray. Here, viewing the facts most favorable to Plaintiff, there is evidence that Bagby was an asthmatic, that he relayed this information to ADC officials, that he was sprayed at least twice, that he was in visible physical distress when he did not comply with the orders to get up, that he told officers he could not breathe, that the pepper spray was not washed off, and that no medical attention was immediately provided. Additionally, Defendants have admitted that, although they had completed an initial training and certification program for the use of pepper spray, the officers involved had not taken the annual recertification course. (See Pl.'s Ex. WW, p.4; Pl.'s Ex. XX, p.4; Pl.'s Ex. YY, pp.3-4; Pl.s Ex. AAA, p.4.)

Under these circumstances, genuine material issues exist as to the predicate facts underlying Plaintiff's claims against Defendants Rochelle, Winters and Broadway regarding excessive force and denial of medical care, precluding application of qualified immunity.

As to Defendants Norris and Terry, the Court also finds that material factual issues exist as to whether a failure to train or supervise caused a constitutional violation in this case and whether they had notice that training and supervision were inadequate and likely to cause a constitutional violation.

Qualified immunity is not available to Defendants.

### Official-Capacity Claims; Claims against ADC

Defendants assert that all official-capacity claims must be dismissed, as well as all claims against the ADC itself.

The law is well established that states, state agencies, and state officials sued in their official capacities are not "persons" subject to suit under § 1983. Will v. Michigan Dept. of

9

State Police, 491 U.S. 58, 64, 71 (1989); see Strickler v. Waters, 989 F.2d 1375, 1388 (4t[h] Cir. 1993) (Virginia Department of Correction not "person"). Moreover, the Eleven[th] Amendment bars a citizen from bringing suit for monetary damages in federal court again[st] a state, state agency or state official in his official capacity. Id. at 66, 70. See Martin [A.] Schwartz & John E. Kirklin, Section 1983 Litigation: Claims and Defenses § 8.2, p.154 (3d e[d. ]1997). An official-capacity suit is merely another way of pleading an action against the sta[te] itself. Hafer v. Melo, 502 U.S. 21, 25 (1991).

Suits for injunctive relief, however, are allowed to proceed against state officials in the[ir] official capacities. Will, 491 U.S. at 70 n. 10.[1] Plaintiff does request prospective injuncti[ve] relief, and he has sued Defendant Norris in his official capacity. The general rule is that a[n] inmate can obtain neither injunctive or declaratory relief under § 1983 when he is no long[er] subject to the prison conditions of which he complains because the claim has become moo[t.] Smith v. Hundley, 190 F.3d 852, 855 (8th Cir. 1999); Martin v. Sargent, 780 F.2d 1334, 133[5] (8th Cir. 1985). An exception to the mootness doctrine applies in extraordinary cases if th[e] claim is "capable of repetition, yet evading review." Murphy v. Hunt, 455 U.S. 478, 482 (198[2).] There must be a "'reasonable expectation' or a 'demonstrated probability' that the sam[e] controversy will recur involving the same complaining party." Id. (emphasis added). As it [is] impossible for the alleged constitutional violations to recur against Eddie Bagby or Ellis Fost[er,] they have no standing to seek injunctive relief.

---

[1]Because of the Eleventh Amendment, such claims cannot proceed against the state or state agen[cy] directly, and may proceed against a state official only because official-capacity actions for prospective relief a[re] not treated as actions against the state. Kentucky v. Graham, 473 U.S. 159, 167 n.14 (1985) (citing Ex Pa[rte] Young, 209 U.S. 123 (1908)).

10

Therefore, all official-capacity § 1983 claims against all Defendants must be dismissed, a well as all § 1983 claims against Defendant ADC.

### Pendent State Law Claims

The fact that a claim is asserted against a state or state official under the doctrine ( pendent or supplemental jurisdiction does not take it outside the scope of Eleven Amendment immunity. Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 117-2 (1984). Therefore, Plaintiff's official-capacity claims against Defendants and the ADC arisin under state law must be dismissed.

Defendants contend that the remaining individual-capacity state tort claims are barred b Ark. Code Ann. § 19-10-305(a), which provides that state officers and employees "are immun from liability and from suit, except to the extent that they may be covered by liability insurance for damages for acts or omissions, *other than malicious acts or omissions*, occurring within th course and scope of their employment" (emphasis added). While material, factual question exist as to whether the conduct of Defendants Rochelle, Winters and Broadway would mee this standard, the Court finds that the statute does bar the individual-capacity state law clair against Defendants Norris and Terry.

### Arkansas Civil Rights Act

For the same reasons as stated regarding Plaintiff's other pendent state-law claim: Plaintiff's official-capacity claims against all Defendants under the Arkansas Civil Rights Ac Ark. Code Ann. § 16-123-101 et seq., are barred by the Eleventh Amendment, as are th

11

individual-capacity claims against Defendants Norris and Terry. The individual-capacity claim against Defendants Rochelle, Winters and Broadway can proceed under the this Act.

### Violation of ADC Policies

The Court agrees that an internal ADC policy does not create a constitutional right, nor does a prison official's failure to follow such a regulation rise to the level of a § 1983 claim. See Kennedy v. Blankenship, 100 F.3d 640, 643 (8th Cir. 1996) (no federal constitutional liberty interest in having state officers follow state law); Valiant-Bey v. Morris, 829 F.2d 1441, 1444 n.5 (8th Cir. 1987) (§ 1983 claim cannot be premised on violation of state regulation). Nevertheless, whether Defendants complied with ADC policies would be relevant in evaluating all of the evidence presented to determine if a constitutional deprivation occurred. See Fall v. Nesbitt, 966 F.2d 375, 380 (8th Cir. 1992).

To the extent that Plaintiff is alleging an independent claim regarding violation of ADC policies, summary judgment is appropriate.

### Complaint in Intervention

Defendants have not advanced a sufficient basis for dismissal of the complaint in intervention; therefore, the intervenor will be allowed to remain in this action.

### Conclusion

For the foregoing reasons, Defendants' motion for partial summary judgment (docket entry #45) is (1) GRANTED as to all § 1983 claims against all Defendants in their official capacities; (2) GRANTED as to all claims against Defendant ADC; (3) GRANTED as to the request for

prospective injunctive relief; (4) GRANTED as to the official-capacity claims against a Defendants under pendent state law and the Arkansas Civil Rights Act; (5) GRANTED as t the individual-capacity claims against Defendants Norris and Terry under pendent state la and the Arkansas Civil Rights Act; (6) GRANTED as to independent claims that Defendant failed to comply with ADC policies; (7) DENIED as to the Complaint in Intervention; and (8 DENIED in all other respects.

IT IS SO ORDERED this 25th day of April, 2001.

_____
UNITED STATES MAGISTRATE JUDGE

THIS DOCUMENT ENTERED ON
DOCKET SHEET IN COMPLIANCE
WITH RULE 58 AND/OR 79(a) FRCP
ON 4-26-01 BY __

F I L E   C O P Y

vjt

UNITED STATES DISTRICT COURT
Eastern District of Arkansas
U.S. Court House
600 West Capitol, Suite 402
Little Rock, Arkansas 72201-3325

April 26, 2001

* * MAILING CERTIFICATE OF CLERK * *

Re:   4:99-cv-00733.

True and correct copies of the attached were mailed by the clerk to the following:

    Michelle Banks Odum, Esq.
    Arkansas Attorney General's Office
    Catlett-Prien Tower Building
    323 Center Street
    Suite 1100
    Little Rock, AR   72201

    Willard Proctor Jr., Esq.
    Proctor & Associates
    1619 Broadway
    Little Rock, AR   72206

    Ralph M. Cloar Jr., Esq.
    Attorney at Law
    Prospect Building
    1501 North University Avenue
    Suite 640
    Little Rock, AR   72207-5235

    Timothy A. Rowe, Esq.
    Attorney at Law
    22 East Washington Street
    Suite 600
    Indianapolis, IN   46204

    Pamela D. Brogdon, Esq.
    Ed Webb & Associates
    1014 West Third Street
    Little Rock, AR   72201

    cc: press

4-26-01                                                         V. Turner